UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2|15|18

UNITED STATES OF AMERICA,

   -against-

JEMEL GOODE, et al.,

                Defendant.

16 Cr. 529 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Defendants Jemel Goode ("J. Goode"), Lasean Goode ("L. Goode"), and Sharrahn Walton ("Walton") (collectively, the "Moving Defendants") were indicted, along with others, for conspiring to distribute or possess with intent to distribute cocaine and cocaine base ("crack"). (*See* ECF No. 4 ("Indictment" or Indict.").)  Before the Court are the Moving Defendants' pre-trial motions[1] seeking, *inter alia*, suppression of certain evidence and disclosure of discovery.  For the reasons that follow, the motions are DENIED in part and GRANTED in part.

## ALLEGED FACTS[2]

The Moving Defendants, along with eight others, were charged in a one count Indictment alleging a dual object conspiracy to distribute or possess with intent to distribute cocaine and crack. (*See* Indict.)  Both J. Goode and L. Goode were arrested on August 9, 2016.  Defendant Walton was arrested and searched on January 25, 2016 in connection with state charges for which he is currently serving a term of imprisonment.  (*See* Brief in Support of Sharrahn Walton's Pretrial Motion (ECF No. 76) ("Walton Br."), at 3-4.)  On August 9, 2016, Walton was produced on a

---

[1] Defendants L.Goode and Walton did not file reply memoranda in further support of their motions. The Court hereby deems their motions fully submitted and renders the following decision on the papers filed.

[2] The following facts are taken from the Indictment, (ECF No. 4), the Defendants' briefs in support of their motions, (*see* ECF Nos. 72, 78, 76), and the Government's oppositions to each of the motions, (*see* ECF Nos. 95, 100, 99.)

federal writ to this Court for arraignment on the Indictment.  (*Id.* at 4.)  As of the date of this Opinion, six of the Defendants have pled guilty.

According to the Indictment, the alleged conspiracy took place "[f]rom at least in or about July 2014, up to and including in or about July 2016, in the Southern District of New York and elsewhere."  (*See* Indict. ¶1.)  The Indictment charges the Defendants with intentionally and knowingly conspiring to distribute "and possess with intent to distribute controlled substances in violation of Title 21 United States Code, Section 841 (a)(1)."  (*Id.* ¶2.)  The Moving Defendants are each charged in the first object of the conspiracy, to "conspire[] to distribute and possess with intent to distribute 280 grams or more of mixtures and substances containing a detectable amount of cocaine base."  (*Id.* ¶3.)  As overt acts, the Indictment charges each of the Moving Defendants with selling crack to confidential informants in Haverstraw, New York on March 24, 2016, (*see* Indict. ¶5(a)),  June 9, 2016, (*id.* ¶5(c)), and January 15, 2016, (*id.* ¶5(k)), respectively.

The Government obtained a 30 day wiretap on J. Goode's cellphone.  On January 19, 2016, Richard Serrano, an investigator with the Rockland Country Drug Task Force ("RCDTF"), applied for a wiretap on J. Goode's cell phone ("JG Serrano Affidavit" or "JG Serrano Aff.").  (*See* Declaration of Theodore S. Green in Support of J. Goode's Pretrial Motion (ECF No. 71) ("Green Decl."), Ex. A, Goode000353 – Goode000394.)  The application was granted and two orders were issued: an In Camera Order Authorizing Interception of Wire and Electronic Communications ("JG Wiretap Order") and an In Camera Order to the provider directing its compliance with the RCDTF ("JG Provider Order").  (*See id.* at Ex. A, Goode 000395 – Goode000402.)  Four extensions were granted for an additional 30 days each.  (*See id.* at Exs. B-E.)  The JG Serrano Affidavit contains substantial information regarding pen register data, physical surveillance, seven controlled buys from J. Goode between July 16, 2015 and January 11, 2016, and information from

a confidential source.  (*See* JG Serrano Aff., Goode359 – Goode000366.)

The Government also obtained a wiretap on Walton's phone on January 19, 2016, (*see* Declaration of Joseph A. Vita in Support of Walton's Pretrial Motions (ECF No. 77) ("Vita Decl."), Ex. A. ("SW Serrano Affidavit" or "SW Serrano Aff.")), and, in granting the application, Judge Zuckerman issued the SW Provider Order.  (*See* SW Provider Order.)[3]  In furtherance of the application, the SW Serrano Affidavit contained information regarding pen register data, physical surveillance, eight controlled buys from Walton between June 9, 2015 and January 12, 2016, and information from a confidential source.  (*See* SW Serrano Aff., Goode000634 – Goode000645.)

The JG Serrano Affidavit and the SW Serrano Affidavit (collectively, the "Serrano Affidavits"), also discussed seven other avenues for investigation and the reasons why none were viable options for exposing the breadth of the conspiracy.  (*See* JG Serrano Aff., Goode000366 – Goode000372; SW Serrano Aff., Goode000646 – Goode000652.)

Both Serrano Affidavits explain procedures for the controlled buys, including that the confidential source would contact the target via call or text message and receive information regarding the buy location.  (*See* JS Serrano Aff., at Goode000358 – Goode000365; SW Serrano Aff., Goode000634 – Goode000645.)  Before preceding to the location, the confidential source was searched, provided with marked bills, and fitted with audio visual equipment.  (*See id.*) Thereafter, members of the RCDTF performed physical surveillance during the buys.  (*Id.*) Afterward, the confidential source was searched again and the substances were field tested.  (*Id.*)

Both wiretap warrants included Provider Orders.  (*See* JG Provider Order; *see also* Government's Brief in Opposition to Sharrahn Walton's Pretrial Motions (ECF No. 99) ("SW

---

[3] Neither Defendant Walton nor the Government has provided the Court with a copy of Judge Zuckerman's Order authorizing the interception of wire and electronic communications.

Gov't Br."), Ex. A ("SW Provider Order").)  In addition to intercepting the communications on J.

Goode and Walton's phones, these Provider Orders authorized, (*see* JG Provider Order,

Goode000396; *see also* SW Provider Order, Goode000664.), and the Government obtained, GPS

data from J. Goode and Walton's phones.  From J. Goode's phone, the data was obtained every 15

minutes between January 20, 2016 and June 10, 2016.  (*See id.*, Ex. I.)[4]

On August 9, 2016, the date that Defendant L. Goode was arrested, a search was performed

at 42 Peck Street, West Haverstraw, New York, 10993, pursuant to a search warrant.  (*See* Brief

in Support of L. Goode's Pretrial Motion (ECF No. 78) ("LG Br."), at 16; *see also* Declaration of

Howard E. Tanner in Support of L. Goode's Pretrial Motion (ECF No. 79) ("Tanner Decl."),

Goode000001 – Goode000013.)  The warrant was issued by Magistrate Judge Paul E. Davison on

August 5, 2016, on the application of George Gjelaj, an FBI agent.  (*See* Tanner Decl.,

Goode000001 – Goode000013, (the "Gjelaj Affidavit" or "Gjelaj Aff.".)  The application provided

a description of the subject premises, the things to be seized, the nature of the crimes, and

information relating to probable cause.  (*Id.*)  The Gjelaj Affidavit indicated that the majority of

controlled buys occurred at L. Goode's prior residence and others were also performed at the

subject premises, 42 Peck Street, included information from a confidential source, and detailed

four controlled buys.  (*Id.* at Goode000004 – Goode000007.)

## NATURE OF DEFENDANTS' MOTIONS

Defendant J. Goode's motion seeks suppression of: (1) evidence obtained as a result from

wiretaps on his and Walton's phones, or in the alternative for a hearing pursuant to *Franks v.

Delaware*, 438 U.S. 154 (1978); (2) suppression of GPS data; (3) identification evidence, or in the

alternative, a hearing; and (4) evidence obtained from J. Goode's home.  (*See* Brief in Support of

---

[4] Neither Walton nor the Government provided copies of the intercepted GPS data, so this Court does not know how frequent, or over what period of time, data was obtained pursuant to the SW Provider Order.

Jemel Goode's Pretrial Motions (ECF No. 95) ("JG Br."), at 1.) J. Goode's motion also seeks an order directing the Government to disclose other acts evidence it seeks to introduce at trial pursuant to Fed. R. Evid. 404(b). (*Id.*)

Defendant L. Goode's motion seeks suppression of: (1) evidence obtained from the execution of the August 5, 2016 search warrant, or in the alternative, for a *Franks* hearing; and (2) wire communications and other derivative evidence. (*See* LG Br. at 2.) L. Goode's motion also seeks an order directing the Government to: (1) provide a bill of particulars; (2) disclose exculpatory evidence consistent with *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny; and (3) disclose the identity and personal information of any informants. (*Id.* at 1.) Finally, L. Goode seeks preclusion of any other crimes or bad acts pursuant to Rules 103, 104, 403, 404(b), 608, and 609 of the Federal Rules of Evidence and severance of his trial from that of his co-defendants.

Sharrahn Walton's motion seeks suppression of evidence obtained: (1) from wiretaps on J. Goode and Walton's phones, or in the alternative, a *Franks* hearing; and (2) as a result from Walton's January 25, 2016 arrest, or for a hearing. (*See* Walton Br. at 1-2.) Walton also seeks an Order directing the Government to: (1) provide a bill of particulars; (2) provide discovery pursuant to Fed. R. Crim. P. 16; and (3) disclose any evidence of other crimes, wrongs, or acts pursuant to Fed. R. Evid. 404(b). (*Id.*) Walton also seeks severance of his trial from his co-defendants.

## DISCUSSION

### I.    Motions to Suppress Wiretap Evidence

Defendants J. Goode and Sharrahn Walton move to suppress any evidence obtained as a result of the wiretaps. (*See* JG Br. at 1, 8-15; Walton Br. at 1-2, 8-25.) Defendant L. Goode joins in each of the motions.[5] (*See* LG Br. at 2, 21.) The motions to suppress are denied in part and

---

[5] Defendant L. Goode has standing to seek suppression of both wiretaps, as he is an aggrieved party, *see United States v. Fury*, 554 F.2d 522, 525 (2d Cir. 1977), and has provided an affidavit, (*see* L. Goode's Declaration (ECF No. 81)

granted in part.

Title III of the Omnibus Crime Control and Safe Street Act ("Title III"), governs authorization of wiretaps. *See* 18 U.S.C. § 2510 *et seq.* On an affidavit by law enforcement, Title III permits, in pertinent part, a court to authorize the interception of wire and electronic communication on a showing of probable cause to believe: (1) that the target was committing, had committed, or is about to commit a crime enumerated in the statute; (2) that communications concerning that crime will be obtained through the wiretap; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . . *See* 18 U.S.C. § 2518(3)(a)-(c); *United States v. Martino*, 664 F.2d 860, 866 (2d Cir. 1981); *United States v. Solomonyan*, 451 F. Supp. 2d 626, 635 (S.D.N.Y. 2006).

In reviewing whether a wiretap was properly granted, the reviewing Court must take a position of deference. *Martino*, 664 F.2d at 867 (citing *United States v. Perry*, 643 F.2d 38, 49-50 (2d Cir. 1981)); *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980); *Mapp v. Warden*, 531 F.2d 1167 (2d Cir. 1976). Where there is doubt, the law requires "resol[ution] in favor of upholding the issuing court's order." *Solomonyan*, 451 F. Supp. 2d at 636. Accordingly, this Court's role is to determine whether "the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Concepcion*, 579 F.3d 214, 217 (2d Cir. 2009); *United States v. Robledo*, 254 F. App'x 850, 852 (2d Cir. 2007) (summary order); *United States v. Zapata*, 164 F.3d 620, 1998 WL 681311, at *2 (2d Cir. Jan. 30, 1998) ("Wiretap orders are presumed valid, and a reviewing court must accord substantial deference to a judicial officer's finding that probable cause exists.").

---

("LG Decl.")), swearing that he was intercepted on each of the wiretaps, had no knowledge that his conversations were being intercepted, and had a reasonable expectation of privacy in his conversations, *United States v. Montoya-Escheverria*, 892 F.Supp. 104, 106 (S.D.N.Y. 1995).

## A. **Jemel Goode Wiretap**

J. Goode moves to suppress evidence obtained from the wiretaps on his and Walton's phones for: (1) lack of probable cause; (2) lack of necessity; and (3) failure to minimize. (*See* JG Br. at 1.) In the alternative, J. Goode requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the application(s) for the wiretap included reckless or deliberately false statements. (*Id.*) Defendants L. Goode and Walton join in this motion. (*See* LG Br. at 2; Walton Br. at 1.) For the following reasons, the Defendants' motions to suppress the evidence obtained from the wiretap are denied in part and granted in part.

Preliminarily, Defendant Walton's motion is denied for lack of standing. Only an aggrieved party – "a person who was a party to any intercepted wire, oral or electronic communication or a party against whom the interception was directed" – can challenge the validity of the wiretap. 18 U.S.C. § 2510(11). Defendant must demonstrate that he had a reasonable expectation of privacy, *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991), and was intercepted on the wiretap, *United States v. Montoya-Eschevarria*, 892 F.Supp. 104, 106 (S.D.N.Y. 1995), and must do so by "sworn evidence, in the form of affidavit or testimony", *id.*; *United States v. Bellomo*, 954 F. Supp. 630, 639-40 (S.D.N.Y. 1997); *United States v. Rodriguez*, No. 08CR1311(RPP), 2009 WL 2569116, at *4 (S.D.N.Y. Aug. 20, 2009). As the Government aptly points out, Defendant Walton has provided no such affidavit. (*See* SW Gov't Br. at 10.) The statement in Walton's brief that he is an aggrieved party will not suffice.

### 1. *Probable cause*

At bottom, J. Goode argues that the JG Serrano Affidavit did not contain probable cause to believe that the Defendant was involved in a conspiracy, or even that a narcotics enterprise existed. (*See* JG Br. at 9-10.) Defendant's argument is based on a misunderstanding of the law. The law merely requires there be "probable cause to believe that *a* crime has been, is being, or is about to be committed . . . ." *United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993) (emphasis added); *United States v. Rowell*, 90. F.2d 899, 902 (2d Cir. 1990) (probable cause standard for wiretap is same as search warrant, whether "the totality-of-the-circumstances indicate a probability of criminal activity") (internal quotations omitted); *see also United States v. Fea*, No. 10CR708 (PKC), 2011 WL 1346981, at *5 (S.D.N.Y. Apr. 5, 2011) (noting that defendant "may not 'dissect each piece of information in the [investigator's] affidavit to show that each fact taken alone does not establish probable cause"). The central question is whether "the facts disclosed to the court are 'sufficient to warrant a prudent man in believing' that evidence of a crime could be obtained through the use of electronic surveillance." *Zapata*, 1998 WL 681311, at *2 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Upon that standard, this Court defers to the issuing Court's grant of the wiretap and finds that the evidence of seven controlled buys (each successful and substantiated by physical surveillance), the confidential source's identification of J. Goode as the individual that sold him the drugs, and the use of J. Goode's cellphone to set up each of the buys, (*see generally* JG Serrano Aff.), was sufficient.

Even if the Defendant's interpretation of the law were correct, probable cause still exists. Using the "totality of the circumstances" test, *Wagner*, 989 F.2d at 72-73; *Rowell*, 903 F.2d at 901, the JG Serrano Affidavit demonstrated probable cause to believe that, not only was J. Goode involved in single drug sales, he was involved in an overall conspiracy to distribute narcotics.

Such is clear from references to pen register data indicating that J. Goode was in frequent contact with various "known" drug dealers, including, *inter alia*, Sharrahn Walton, Tyshawn Mix, and L. Goode, that was supported by the RCDTF's investigation, (*see* JG Serrano Aff., at Goode 000358, Goode000365), and Serrano's belief that a large group of men were selling controlled substances in Haverstraw and the RCDTF was able to identify some, but not all. (*Id.* at Goode000357.)

This information, considered with the details of the seven controlled buys from J. Goode is strong. *See Wagner*, 989 F.2d at 74 ("The second prong, whether the affidavit establishes probable cause that the wiretap will intercept evidence of a crime, is met by the pen register data showing frequent calls between those who the CI stated were members of the conspiracy . . . . [i]n light of these facts, the affidavit easily established that it was more likely than not that evidence of the conspiracy would be obtained by intercepting calls. . . ."); *Rowell*, 903 F.2d at 902-03 (finding probable cause existed in narcotics conspiracy case where affidavit included "pen register records" and "informants' statements" supporting conclusion that defendant "was engaged in narcotics activity"); *see also United States v. Shipp*, 578 F.Supp. 980, 986 (S.D.N.Y. 1984). Moreover, the JG Serrano Affidavit included information from a confidential source (CS-1) indicating that J. Goode was Walton's supplier. (*See* JG Serrano Aff., at Goode000365.)[6]

Further, the Government filed six applications, one for the initial wiretap and five subsequent extensions. (*See* Green Decl., Exs. A – E.) Four different judges reviewed these applications. (*Id.*) Each found there to be probable cause warranting authorization and extension

---

[6] J. Goode argues that this information should not be included in the probable cause determination because no information was given regarding CS-1's reliability. (*See* JG Br. at 9-10.) The same paragraph which contains this information also indicates that, as part of their investigation, the RCDTF conducted eight controlled buys of cocaine from Walton using CS-1, who also purchased narcotics from Tyshawn Mix, Nathaniel Saunders, Jr., Nathaniel Saunders, Sr., and Demond Vaughn, Jr. (*See* JG Serrano Aff., at Goode000365.) Second, even if this information were excluded, as indicated above, the JG Serrano Affidavit otherwise included sufficient facts to meet probable cause.

of the wiretap. (*Id.*) It is not this Court's role to "'make a *de novo* determination of sufficiency'" of the facts contained in the wiretap affidavit, this Court's role is to look for minimal facts to adequately to support the underlying determination. *Concepcion*, 579 F.3d at 217; *Robledo*, 254 F. App'x at 852. This standard has been met.

## 2. *Necessity*

The necessity requirement ensures that "normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c). To meet such a burden, the application affidavit must contain "a 'full and complete statement' regarding procedures attempted or considered." *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983). "[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful" will not suffice. *Id.* Nevertheless, "the statute does not require that all possible techniques be tried before a wiretap may be authorized." *Martino*, 664 F.2d at 868.

The issuing Court must test the showing "in a practical and commonsense fashion," to ensure that "wiretapping is not resorted to in situations where traditional investigation techniques would suffice to expose the crime." *Id.* (quoting *United States v. Kahn*, 415 U.S. 143, 153, n.12 (1974). Such determinations are accorded great deference. *Solomonyan*, 451 F. Supp. 2d at 637.

The JG Serrano Affidavit meets the necessity requirement. Where, as here, the wiretap was "not merely to obtain further evidence about" the target, but also seeks information regarding "suppliers and customers," or an overarching conspiracy, necessity is typically met. *Martino*, 664 F.2d at 868. Indeed, this case is remarkably parallel to *Martino*. *Id.* That case involved a narcotics conspiracy, and the affidavit noted that physical surveillance was evaded by the target and pen registers were already used. *Id.* Similarly, the JG Serrano Affidavit demonstrated that a goal of the investigation was to uncover J. Goode's suppliers and other information regarding existence

of the narcotics conspiracy, (*see* JG Serrano Aff., Goode000367), and demonstrated that J. Goode had become suspicious of his surroundings, ultimately changing the buy location previously given to the confidential source on January 11, 2016, (*see id.*, Goode000364 – Goode000365.)  Finally, the JG Serrano Affidavit demonstrated that pen registers had already been used to establish that J. Goode was in contact with certain "known" drug dealers, and are unlikely to be of further help in the investigation.  (*See id.* at ¶¶23-24, 60.)  Per *Martino*, necessity was shown.

In addition to the above, the JG Serrano Affidavit discussed how a total of seven investigative techniques would be insufficient to meet the needs of the investigation.  (*See* JG Serrano Aff., Goode000366 – Goode000372.)  The JG Serrano Affidavit noted, *inter alia*, that confidential sources would be unable to obtain facts sufficient to demonstrate the breadth of the conspiracy, including the identity of other members of the conspiracy, (*id.* at Goode000367 – Goode000368), search warrants would be ineffective because most of the controlled buys were conducted outside and a search warrant would only cause the targets to "flee the jurisdiction before the goals of th[e] investigation were accomplished", (*id.* at Goode000368 – Goode000369), and physical surveillance would not allow the officers to get close; in fact, during one of the buys, the targeted pointed out a RCDTF vehicle, (*id.* at Goode000371.)

### 3. *Minimization*

Minimization requires law enforcement agents to "minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  In assessing whether this requirement is met, a reviewing Court must apply "an objective assessment of an officer's actions in light of the facts and circumstances then known to him."  *Drimal v. Tai*, 785 F.3d 219, 225 (2d Cir. 2015).  Where, as here, the Government has met its burden to establish that minimization was performed in good faith, *United States v. Gotti*, 42 F. Supp. 2d 252, 269

(S.D.N.Y. 1999), the burden shifts to the defendant to demonstrate "that a substantial number of nonpertinent conversations [have] been intercepted unreasonably," *United States v. Cirillo*, 499 F.2d 872, 881 (2d Cir. 1974); *United States v. Menendez*, No. S(3) 04CR219 (DAB), 2005 WL 1384027, at *3 (S.D.N.Y. Jun. 8, 2005).

The Second Circuit has announced a two-minute presumption where there is "wide-ranging criminal activity", such as the alleged conspiracy before the Court. *Drimal*, 785 F.3d at 225 (citing *United States v. Bynum*, 485 F.2d 490 (2d Cir. 1973). The two-minute presumption excludes from review "calls under two minutes" on the premise that such a period of time is "too brief a period for an eavesdropper even with experience to identify the caller and characterize the conversation as merely social or possibly tainted." *Id.* Additionally, where, as here, the "investigation focuses on a widespread conspiracy," extensive surveillance is permitted. *Id.*

Based on a review of the record, the agents were regularly trained on proper minimization techniques and minimization logs were created.[7] (*See* Greene Decl., Exs. F, H.) Such factors indicate proper adherence to minimization procedures. *Gotti*, 42 F. Supp. 2d at 269; *Menendez*, 2005 WL 1384027, at *3. The fact that J. Goode is challenging five communications out of a total of 12,678 intercepted, further indicates that minimization was performed in good faith.

The two-minute presumption applies in this case. Here, as in *Bynum*, the amount of intercepted communications was substantial; totaling approximately 5,270 calls and 7,408 text messages over a five-month period. (*See* Government Brief in Opposition to J. Goode Pretrial Motion (ECF No. 95) ("JG Gov't Br."), at 18.) This case involves "wide-ranging criminal activity," worthy of the two-minute presumption. *Bynum*, 485 F.2d at 500. Of all of these calls,

---

[7] Defendant's challenge to the veracity of the minimization training sign-in sheets is of no moment. (*See* JG Br. at 6-7.) Defendant failed to demonstrate that a substantial number of nonpertinent communications were not minimized. As such, he is not entitled to a hearing to question the minimization procedures, and the fact that Michael Fennessy's signature is inconsistent on a number of the sign-in sheets does not alter the outcome.

Defendant identified a mere five that were subject to scrutiny. (*See* JG Br. at 7-8.) Two of these were approximately two minutes long (one, just 14 seconds over two minutes), (*see* Greene Decl., Ex. H), warranting exclusion from the minimization analysis. What remains are three communications, none exceeding six minutes. (*Id.*)

The Government concedes that these should have been minimized, as they pertained to conversations related to J. Goode's daughter. (*See* JG Gov't Br. at 18-19.) In light of the vast disparity between the amount of calls intercepted and the amount challenged, the Defendant "has failed to demonstrate that a substantial number of nonpertinent conversations were unreasonably intercepted," and neither suppression of the entire wiretap nor a *Franks* hearing is appropriate. *Cirillo*, 499 F.2d at 880-81; *Gotti*, 42 F. Supp. 2d at 269. Suppression is only warranted of the non-pertinent communications identified in Defendant's brief. *United States v. McGuinnes*, 764 F.Supp. 888, 900 (S.D.N.Y. 1991) ("The court will not exclude all evidence gathered by the wiretap on the basis of a few 'fribbling excesses.'"). The three communications, identified by Defendant and dated March 13, 2016, April 11, 2016, and May 7, 2016, are hereby suppressed.

### 4. *Good Faith Exception*

Even if J. Goode's arguments warranted a finding of insufficient probable cause or that the Government failed to demonstrate the requisite necessity, the good faith exception to the exclusionary rule would apply. *Solomonyan*, 451 F. Supp. 2d 626, 637-38 (S.D.N.Y. 2006) (collecting cases applying good faith exception to wiretaps). Where a warrant was issued, the exclusionary rule requires suppression only where: "(1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit for the wiretap order; or (3) the agent's reliance on the warrant was not reasonable." *Id.* at 638. There is

no evidence substantiating the existence of any of these situations, despite Defendant's argument that the agent made reckless misstatements in preparing the supporting affidavit.

### 5. *Franks Hearing*

Defendant also requests a *Franks* hearing to determine whether the agent misled the issuing Court. Defendant's request is denied, as he has failed to make the substantial showing that "(1) the warrant application contained false statements or omissions made knowingly and intentionally or with reckless disregard for the truth; (2) the omitted or misstated information was material; and (3) without the false or omitted material, the affidavit does not establish probable cause. *Zapata*, 1998 WL 681311, at *2 (citing *Franks*, 438 U.S. at 155-56.) To make this determination, the Court must "'set aside the falsehoods' and determine '[w]hether the untained portions [of the application] suffice to support a probable cause [or necessity] finding.'" *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013).

J. Goode argues that the JG Serrano Affidavit stated that "a pen register issued by a federal court on May 17, 2015," while no such pen register was issued until June of that year. (*See* JG Br. at 12-13.) The Government notes that a Magistrate Judge in the Southern District of New York did in fact issue a pen register on June 15, 2015, arguing that the reference to "May 17, 2015" was more likely a typographical error. (*See* JG Gov't Br. at 16-17.) This Court agrees. Defendant has failed to demonstrate the high burden of a "substantial preliminary showing that a false statement" was knowingly made. *Zapata*, 1998 WL 681311, at *2; *Solomonyan*, 451 F. Supp. 2d at 638. The discrepancy appears to amount to a question of doubt, properly resolved in favor of upholding the issuing court's order." *Id.* at 636.

Even if this Court determined that this was a false statement made with reckless disregard for the truth, Defendant is not entitled to a *Franks* hearing, because this statement was not material

to the probable cause determination.  Even in absence of this information, as reasoned *supra*, I(A)(1), there was still sufficient probable cause to authorize a wiretap.

### B. <u>Sharrahn Walton Wiretap</u>[8]

#### 1. *Probable Cause*

As with J. Goode, Walton's argument that probable cause of a conspiracy is required, is premised on a misunderstanding of the law; the Government has no such burden.  *See Wagner*, 989 F.2d at 71; *Rowell*, 90. F.2d at 902.  Probable cause was properly demonstrated here because the SW Serrano Affidavit was based on eight control buys with a confidential source, Walton was identified by this source in a photo array, and Walton used his phone to set up buys.  (*See* SW Serrano Aff., at Goode000637 – Goode000645.)

Again, even if probable cause to believe a conspiracy existed was required, the motion would still be denied.  First, Defendant's identification of the allegations related to a "close-knit organization" is the classic type of dissection defendants are not permitted to undergo to argue that, such facts, alone, are insufficient for probable cause.  *Fea*, 2011 WL 1346981, at *5.  Second, the SW Serrano Affidavit demonstrated that Walton was involved in a conspiracy, not just the distribution of "user quantity drugs."  (*See* Walton Br. at 23.)  It references pen register data indicating that Walton was in regular contact with various known drug dealers, including, *inter alia*, Nathaniel Saunders Jr., Nathaniel Saunders Sr., Tyshawn Mix, and Jean Baptiste Poulard, Jr. (*See* SW Serrano Aff., at Goode 000637.)[9]  Additionally, on January 12, 2016, while attempting

---

[8] Walton's description of his arguments notes that the wiretap was improperly minimized, (*see* Walton Br. at 1-2), though he makes no substantive arguments to that effect and does not identify any questionable communications. Nevertheless, Defendant would cannot overcome Government's showing that minimization was performed in good faith, as demonstrated with the discussion of the J. Goode wiretap.

[9] Defendant contends that the SW Serrano Affidavit does not contain a "basis for [Serrano's] belief that these individuals are known drug dealers."  (*See* Walton Br. at 10.)  To the contrary, the SW Serrano Affidavit explicitly states that the RCDTF, using "various investigative techniques" was able to identify certain members of the group. (*See* SW Serrano Aff., Goode000635.)  Read together with the allegations that Walton was in frequent contact with

to set up a buy, Walton advised the confidential source that "no one was in the area" that could sell him drugs, indicating that Walton worked with others. (*Id.* at Goode000645).[10]  Further, during this same buy, another individual was present. (*Id.*)  This information, considered together and along with the detailed account of the eight controlled buys from Walton, is sufficient for probable cause. *See Wagner*, 989 F.2d at 74 (2d Cir. 1993).

### 2. *Necessity*

Defendant Walton's argument as to necessity is denied on substantially the same grounds as J. Goode's arguments, *supra*.  The SW Serrano Affidavit contained sufficient information to indicate that normal investigatory measures would be unsuccessful to ascertain Walton's supplier and understand the breadth of the alleged conspiracy. (*See* SW Serrano Aff., at Goode000646 – Goode000647.)  Pen registers similarly demonstrated connections between Walton and other "known" drug dealers, but would be unlikely to prove further fruitful. (*Id.* at Goode000637.)  During the controlled buy on January 15, 2016, Walton changed location at least two times before he met with the confidential source, evidence of his suspicions of being surveilled. (*Id.* at Goode000643 – Goode000644.)  Further, the affidavit discussed several other investigative procedures that would not prove fruitful, for similar reasons as advanced in the JG Serrano Affidavit. (*Id.* at Goode000647 – Goode000652.)  Based on the foregoing, it is clear that the facts included in the SW Serrano Affidavit were minimally sufficient to support a determination that the wiretap was necessary.

---

"known drug dealers", it is evident that the RCDTF investigation revealed that these individuals were known drug dealers.

[10] This conversation occurred because Walton advised the confidential source to meet him in New Hempstead to purchase the narcotics and the confidential source indicated that this was too far away. (*Id.* at Goode000644 – Goode000645.)  Ultimately, Walton drove to the confidential source to make the exchange. (*Id.* at Goode000645.)

Defendant's identification of other investigation procedures that would be helpful does not carry the day. (*See* Walton Br. at 20-23.) The Government need not exhaust all investigative procedures before turning to the use of a wiretap. *Martino*, 664 F.2d at 868. Walton's argument that many of the investigative procedures already used proved successful similarly fails. *See Rodriquez*, 2009 WL 2569116, at *7 (noting that "simply because other alternative techniques were successful", it does not follow that "the challenged wiretap was not needed to investigate fully this drug conspiracy"). Finally, Defendant's reliance on *Lilla* is misplaced; there, the "affidavit *merely* asserted that 'no other investigative methods exist to determine the identity' of individuals who might have been involved with Lilla." *Lilla*, 699 F.2d 99, 104 (2d Cir. 1983) (emphasis added). The SW Serrano Affidavit does more. Suppression is unwarranted.[11]

## II.     Motion to Suppress Evidence GPS Data and Evidence Obtained During Arrests

### A. <u>Cellphone GPS Data</u>

Defendants L. Goode and Walton move to suppress the GPS data derived from pinging their cell phones at various intervals. (*See* JG Br. at 15-18; SW Br. at 25-28.) The Second Circuit has not directly answered the question of whether a warrant is required before a law enforcement agent can ping a defendant's cellphone to obtain GPS tracking data. *United States v. Caraballo*, 831 F.3d 95, 104 (2d Cir. 2016) (explicitly forgoing the opportunity to decide this issue, because "exigent circumstances justified the officers' pinging" of defendant's phone); *see also United*

---

[11] Like J. Goode, Walton also argues that the good faith exception to the exclusionary rule does not apply to a wiretap. (*See* Walton Br. at 23-25.) First, as decided above, it does. Second, this Court has already upheld the wiretap as facially sufficient. Finally, it bears noting, that Defendant's reliance on and description of *United States v. Spadaccino*, 800 F.2d 292 (2d Cir. 1986), is incorrect. The Second Circuit did not suggest that the good faith exception does not apply to wiretaps. *Spadaccino*, 800 F.2d at 296. Instead, the Second Circuit found the good faith exception inapplicable solely because the "the state court surely would not adopt a good-faith exception" under the circumstances, as the state statute contained a notice requirement. *Id.* The Court's conclusion was based on the premise that "the protection given [by the state statute] is plainly greater than what would be accorded by federal law," *id.* 297, indicating that the good faith exception *would* apply to a wiretap in federal court.

*States v. Gilliam*, 842 F.3d 801 (2d Cir. 2016) (no definitive holding regarding Fourth Amendment protections).

Case law in this Circuit appears split on whether an individual has a reasonable expectation of privacy in their location. *Compare In re U.S. for an Order Auth. Release of Historical Cell-Site Info.*, 809 F. Supp. 2d 113, 127 (E.D.N.Y. 2011) (discussing historical cell-site info, but ultimately holding that "the government's surveillance of our movements over a considerable time period through new technologies" should be subject to the protections of the Fourth Amendment); *with Cucuta v. New York City*, 25 F. Supp. 3d 400, 416 (S.D.N.Y. 2014) (noting that "no Fourth Amendment violation occurs when law enforcement uses cell phone location data to ascertain a person's whereabouts"); *In re Smartphone Geolocation Data App.*, 977 F. Supp. 2d 129, 145 (E.D.N.Y. 2013) ("it is clearly within the knowledge of cell phone users that their telecommunication carrier, smartphone manufacturer and others are aware of the location of their cellphone at any given time"); *see also United States v. Pascual*, 502 F. App'x 75, 80 (2d Cir. 2012) (upholding admission of cell-site records secured pursuant to a subpoena, though on review for plain error, and admitting that the law on this issue is undecided).

Although the Second Circuit did not definitely state one way or the other, *Gilliam* appears to indicate that an individual has a reasonable expectation of privacy in his location and does not voluntarily provide that information to a third party. *Gilliam*, 842 F.3d at 804, n.2 (assuming a reasonable expectation of privacy in location data and noting that "Congress has 'deemed it reasonable to subordinate any individual privacy interest in cell phone location information to society's more compelling interest in preventing an imminent threat of death or serious bodily injury"). Thus, it appears a warrant is required to obtain this GPS location information.[12]

---

[12] Defendants' contention that *United States v. Jones*¸ 565 U.S. 400 (2012) applies is unpersuasive. In *Jones*, the Court found that physically attaching a GPS tracking device to the defendant's vehicle without a warrant violated the

This GPS information, however, was ordered to be produced attendant to a warrant for a wiretap, albeit explicitly directed in the Provider Orders only. (*See* JG Provider Order; SW Provider Order.) Deference is due to the court's determination that such information should be disclosed to law enforcement. *Zapata*, 1998 WL 681311, at *2. Though Serrano did not specifically state that "probable cause existed to obtain GPS data" or specifically requested same, both Serrano Affidavits contained information minimally adequate to support the determination that was made. The JG Serrano Affidavit demonstrated that J. Goode uses his cellphone to facilitate his drug business, sells narcotics at various locations within Haverstraw, New York, including Railroad Avenue, Highway Avenue, Route 9W, and a Mobil gas station, was wary about his surroundings, and conducted all of the identified buys outside. (*See* JG Serrano Aff., Goode000358 - Goode000369.) The SW Serrano Affidavit notes that Walton uses his cellphone to sell narcotics within Haverstraw, including, Broad Street, Ideal Supermarket on Route 9W, and Stony Point, (*see* SW Serrano Aff., Goode000637 - Goode000645), was wary of his surroundings, conducts his sales of narcotics outdoors, and will change his location on a moment's notice, (*id.* at Goode000644, Goode00650.) Such information, considered with the detail of the controlled buys, was sufficient to demonstrate probable cause to believe that data obtained from pinging the Defendants' cellphones would provide evidence of the crimes being committed. *United States v. Meregildo*, No. 11CR576 (WHP), 2012 WL 3834732, at *2-3 (S.D.N.Y. Aug. 28, 2012).

Even if there was no probable cause to obtain the data, it is not subject to suppression, as the good faith exception to the exclusionary rule applies. *Leon*, 468 U.S. at 909 (exclusionary rule will "permit the introduction of evidence obtained in the reasonable good-faith believe that a search

---

Fourth Amendment because it constituted a trespass. The Court rooted its decision in principles of property law. Obtaining GPS data from a phone in this case cannot be considered a physical trespass on someone's property and is distinguishable from obtaining access to an individual's phone to obtain photos, conversations, and the like, as was seen in *Riley v. California*, 134 S.Ct. 2473 (2014).

or seizure was in accord with the Fourth Amendment"); *Solomonyan*, 451 F. Supp. 2d at 637-38. Both Provider Orders explicitly order the providers to "initiate a signal to determine the location of the subject's mobile device on the service provider's network or with such other reference points as may be reasonable [sic] available and at such intervals and times as directed by the law enforcement agent serving this order." (*See* JG Provider Order, Goode000396; SW Provider Order, Goode00664.) Law enforcement's reliance on this provision to obtain the resulting GPS data, was therefore reasonable. Defendants' motions are denied.

### B. Evidence Obtained During Arrests

Defendants Walton and J. Goode move to exclude any evidence obtained during their arrests as illegally obtained. (*See* JG Br. at 19; Walton Br. at 25-28.) Defendant Walton argues that any evidence obtained as a result of his arrest should be excluded as fruit of the poisonous tree, as his location was obtained through allegedly illegal GPS tracking data. (*See* Walton Br. at 25.) As indicated above, this Court finds that such data was not illegally obtained and, if it was, it was not subject to suppression.

Notwithstanding the legality of obtaining the GPS data, Mr. Walton was arrested shortly after he was alleged to have committed a robbery. (*See* SW Gov't Br. at 19.) The victim allegedly identified the robber as Sharrahn Walton, providing probable cause to believe Walton committed the crime. This Court assumes the legality of the traffic stop (the legality is not contested) and finds the arrest was legal, as it was based on probable cause. *United States v. Watson*, 423 U.S. 411 (1976) (noting that there is no authority holding that "a warrant is required to make a valid arrest for a felony"); *Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that "constitutional reasonableness of traffic stops [does not] depend[] on the actual motivations of the individual officers involved"); *see also Utak v. Strieff*, 136 S.Ct. 2056, 2062 (2016) (Relevant to this case, if

the traffic stop was illegal, suppression is unnecessary, as The Supreme Court notes that under certain circumstances, an "intervening event [can] break the causal change between" the unlawful conduct and the discovered evidence.).  Thus, any evidence obtained from the arrest was collected as a result of a search incident to arrest and is clearly not subject to suppression.  *See United States v. Robinson*, 414 U.S. 218, 235 (1973).  Walton's motion is denied.

J. Goode argues that he is "not aware of any evidence or contraband taken from Goode's residence at 4 Highway Avenue" on the date of his arrest, but would contest the admissibility of any such evidence, if it existed.  (*See* JG Br. at 19.)  Law enforcement agents recovered no evidence from J. Goode's residence.  (*See* JG Gov't Br. at 24.)  His motion is denied as moot.

**C.  <u>August 9, 2016 Search Warrant at 42 Peck</u>**

L. Goode moves to suppress any evidence resulting from the execution of a search warrant performed at 42 Peck Street, Havestraw, New York, on August 9, 2016, or in the alternative for a *Franks* hearing.  (*See* LG Br. at 16-21.)  The issuing court's determination that probable cause exists is accorded great deference.  *Leon*, 468 U.S. at 914; *Wagner*, 989 F.2d at 72.  Probable cause exists where "the totality of the circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011).  Where a confidential source provides a portion of the information supporting probable cause, he will be found reliable if he has a record of giving reliable information or the information is independently corroborated.  *See Rodriguez v. City of New York*, No. 02CV8203 (SAS), 2004 WL 44089, at *3 (S.D.N.Y. Mar. 10, 2004) (citing *Wagner*, 989 F.2d at 72-73).

Search warrants have been upheld where the affidavits contain information from a confidential source and controlled buys with that confidential source.  *United States v. Smith*, 9 F.3d 1007, 1012-15 (2d Cir. 1993); *Abreu v. Romero*, No. 08CV10129 (LAP), 2010 WL 4615879,

at *1, 4 (S.D.N.Y. Nov. 9, 2010) (finding facially valid warrant based on one controlled buy). Among other things, the Gjelaj Affidavit notes that: (1) law enforcement has effected at least 10 controlled buys of crack from J. Goode and L. Goode; (2) the majority of the buys occurred at 55 East Railroad Avenue, L. Goode's former residence (as evidenced from his utility records); and (3) L. Goode moved to 42 Peck Street (as evidence by his utility records and information from a confidential source). (*See* Gjelaj Aff., Goode000004 – Goode000005.) The Gjelaj Affidavit also details four of the 10 aforementioned controlled buys, including the locations at which they occurred. (*Id.* at Goode000005 – Goode000007.) Two of those buys were conducted at the 42 Peck Street location. (*Id.*) All of the information was supported by Gjelaj's training and experience, facts "sufficient to support a finding of probable cause." *United States v. Morales*, 280 F. Supp. 2d 262, 269 (S.D.N.Y. 2003). Probable cause existed to authorize the search warrant.

Defendant's attempts to dispute the reliability of CI-2 are without merit. As courts in this Circuit has consistently held, where, as here, the confidential informant's statements are independently corroborated, the information is reliable. *See Rodriguez*, 2004 WL 44089, at *3. The Gjelaj Affidavit indicates that CI-2 provided information that L. Goode had moved to 42 Peck Street. (*See* Gjelaj Aff., Goode000005.) This was corroborated by Agent Gjelaj who "reviewed the utilities for the Subject Premises, which [are] registered to" L. Goode. (*Id.* at Goode000003.)

For the same reasons, Defendant is not entitled to a *Franks* hearing. Since CS-2's information was properly relied upon, and his credibility is the basis for Defendant's request for a *Franks* hearing, Defendant cannot make the substantial showing required by *Franks*, as detailed *supra*. *See Feola*, 651 F.Supp. at 1118. Defendant's motion is denied.

### III.    Motion to Suppress Identification Evidence

J. Goode moves to suppress the identification evidence.  (*See* JG Br. at 18-19.)  He argues that the photo array was unduly suggestive because his photo "is of a markedly lighter tone than the other photographs to the point where it stands out against the others" and that the description on the identification report is inconsistent with J. Goode's appearance.  (*Id.* at 18.)[13]

In examining a motion to suppress identification evidence, the Court must determine whether "the pretrial identification procedures were unduly suggestive of the suspect's guilt." *United States v. Maldonado–Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).  Fairness depends on "the size of the array, the manner of presentation by the officers, and the array's contents."  *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992).

Defendant has not demonstrated that his photo array was unduly suggestive.  The witnesses were shown six photographs of African-American males—a number sufficient to protect the Defendant's due process rights.  *See United States v. Bennett*, 409 F.2d 888, 898 (2d Cir. 1969) (holding that an array of six not so small as to be impermissibly suggestive).  Additionally, the photographs depict only faces and shoulders of men with medium to dark skin and the same patterns and amounts of facial hair. (*See* Green Decl., Ex. G; JG Gov't Br., Ex. A.)

Further, the fact that Defendant's photograph is lighter than the rest of the photos is unpersuasive a reason to find the photo array unduly suggestive.  *United States v. Adeniyi*, No. 03CR0086 (LTS), 2003 WL 21146621, at *2 (S.D.N.Y. May 14, 2003).  Here, as in *Adeniyi*, although the Defendant's photo is lighter, and thus his skin tone lighter, the difference is not large,

---

[13] J. Goode also argues that the names are included at the bottom of the photo.  (*See* JG Br. at 18.)  In response, the Government provides correct copies of the photo array, initialed by the witnesses, which do not identify the individuals pictured in the photographs.  (*See* JG Gov't Br. at 22.)  This weighs in favor of finding that the photo array was not unduly suggestive.  *United States v. Morgan*, 690 F. Supp. 2d 274, 288 (S.D.N.Y. 2010) (noting that most photo arrays contain 6 photographs and are "not accompanied by descriptions, names, or other identifying writing of any kind").

and thus not unduly suggestive. *Id.*; *see also United States v. Bautista*, 23 F..d 726, 760-31 (2d Cir. 1994) (photo array not unduly suggestive where defendant's photo was lighter than other five); *see also United States v. Zadiriyev*, No. 08CR1327 (HB), 2009 WL 1787922, at * 3 (S.D.N.Y. Jun. 23, 2009) (no undue suggestiveness where defendant's photo appeared lighter than others).

Defendant is not entitled to a pre-trial hearing to determine the suggestiveness of the photo array. Absent a contested issue of material fact as to the suggestiveness of pretrial identification procedures, a defendant is not "automatically entitled to an evidentiary hearing on the claim." *United States v. Hall*, No. 14 CR 105, 2014 WL 2464943, at *2 (S.D.N.Y. May 13, 2014) (internal citations omitted); *see also United States v. Castellano,* 610 F.Supp. 1359, 1439 (S.D.N.Y. 1985) ("A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required."). Such a showing is lacking.

## IV.    Motion to Sever

Defendant L. Goode moves for severance pursuant to Rule 14, and hinges his argument on the fact that J. Goode, his co-defendant and alleged coconspirator, is his brother. (LG Br. at 15-16.)[14] Rule 14 provides that a Court *may* sever "if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants . . . ." Fed. R. Crim. P. 14. Severance, however, is an extreme remedy and is appropriate "*only when* 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The burden is on the defendant to demonstrate that severance is proper; this is "not an easy [burden] to carry" and he

---

[14] Defendant Walton does not move for severance at this time, though the Court acknowledges he has reserved and preserved his right to do so at such time as the Government provides discovery of co-defendant's statements which may prompt such a motion. (*See* Walton Br. at 7-8.) The Court will consider such a motion at the appropriate time.

"must establish prejudice *so great* as to deny him a fair trial." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) (emphasis added). The decision to sever rests within the sole discretion of the District Court, *United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir. 1989). Even in those circumstances where the risk is great, often times a limiting instruction will "suffice as an alternative to granting a Rule 14 severance motion." *Feyrer*, 333 F.3d at 114.

In narcotics conspiracy cases, there is a "policy favoring joinder of trials", especially where "defendants have been jointly indicted." *Cardascia*, 951 F.2d at 482; *see also Zafiro*, 506 U.S. at 539 (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (19687) and noting that joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts") (internal quotations omitted); *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). There is no doubt that there is some prejudice to defendants tried together, but this prejudice "is deemed outweighed by the judicial economies results from the avoidance of duplicative trials." *Cardascia*, 951 F.2d at 482-83.

L. Goode has failed to demonstrate "prejudice so severe as to amount to a denial of a constitutionally fair trial." *Spinelli*, 352 F.3d at 55 (citing *United States v. Serpoosh*, 919 F.2d 835, 837 (2d Cir. 1990)). In multi-defendant cases such as this, there will always be "differing levels of culpability and proof." *Spinelli*, 352 F.3d at 55. The existence of differing evidence is insufficient to warrant severance. *Id.* (also quoting *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) for proposition that joint trials are constitutionally permissible, even where they involve "defendants who are only marginally involved alongside those heavily involved"). Defendant's argument that fewer conversations and text messages between himself and his co-defendants, as compared with his brother and the other co-defendants, is indicative of a great "disparity in the sheer volume of evidence" (*see* JG Br. at 15), warranting severance is unavailing, *see Cardascia*,

951 F.2d at 483 (finding unpersuasive an argument of "guilt by association" where two defendants were "forced to sit before the jury for over a month without any evidence being introduced concerning their activities"); *see also United States v. Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983) (noting that playing "a less prominent role in the conspiracy" is insufficient grounds for severance).

Frequency of communication is not all the Government intends to proffer at trial against L. Goode. (*See* Gov't Br. at 13.) Evidence will include, among wiretap communications, controlled buys involving L. Goode, surveillance, and search warrant results, (*id.*), evidence which appears likely to minimize the alleged "disparity" in the evidence cited by L. Goode.

Where, as here, a conspiracy is charged, evidence is "neither spillover nor prejudicial" where it is equally admissible in separate trials against coconspirators due to "the alleged conspiratorial nature of the illegal activity." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). The evidence of conversations between J. Goode and other members of the conspiracy, would be equally admissible in separate trials against L. Goode and J. Goode. *See United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir. 1984) (evidence of coconspirators admissible against "least active" but "fully implicated conspirator"); *see also Spinelli*, 352 F.3d at 56 (no spillover prejudice where evidence would be admissible in separate trial as "relevant to prov[e] the nature and scope of the conspiracy in which both were, to differing degrees, involved"); *United States v. Hameedi*, No. 17CR137 (JGK), 2017 WL 5152991, at *3 (S.D.N.Y. Nov. 3, 2017) (noting that "claims of prejudicial spillover rarely succeed, particularly in the context of conspiracy cases because the evidence could be admitted in the separate trails").

The fact that L. Goode and J. Goode are brothers does not change the result. The existence of a familial relationship does not give rise to a severe prejudice warranting severance. *See Carson*, 702 F.2d at 367 (finding that it was unlikely jury was "unable to distinguish among family

members in finding guilt or innocence"); *Spinelli*, 352 F.3d at 54-55 (severance motion from

defendant brothers denied); *United States v. Spicer*, No. 10CR657 (SJ)(RML), 2013 WL 871952,

at *4 (E.D.N.Y. Mar. 7, 2013).  The prejudice L. Goode may face from being tried alongside his

brother can be cured by a limiting instruction to the jury.  *Zafiro*, 506 U.S. at 540 ("juries are

presumed to follow their instructions"); *Cardascia*, 951 F.2d at 484.[15]  Defendant's motion is

denied.[16]

## V.  Motions for Bill of Particulars

Defendants L. Goode and Walton seek bills of particulars.  (*See* LG Br. at 3-4; Walton

Br. at 4-7.)

Preliminarily, L. Goode's motion for a Bill of Particulars is procedurally barred.  Local

Criminal Rule 16.1 for the Southern and Eastern Districts of New York states that

> [n]o motion addressed to a bill of particulars or any discovery matter shall be
> heard unless counsel for the moving party files in or simultaneously with the
> moving papers an affidavit certifying that counsel has conferred with counsel for
> the opposing party in an effort in good faith to resolve by agreement the issues
> raised by the motion without the intervention of the Court has been unable to
> reach agreement.

Local Crim. R. 16.1

---

[15] This case was charged as an 11 defendant narcotics conspiracy.  (*See* Indict.)  As of the date of this opinion, six defendants have pled guilty.  Accordingly, the trial will consist of, at most, five co-defendants.

[16] The Government also argues that such a motion is premature, as five defendants remain in this matter, trial has not been set, and it is not certain how many defendants will plead guilty before trial.  (*See* LG Gov't Br. at 11-12.)  Such an argument is inapplicable in this case, as it differs factually from cases where severance was premature.  *See United States v. Minaya*, 395 F. Supp. 2d 28, 42-43 (S.D.N.Y. 2005) (severance motion premature where argument based on number of defendants at trial, and only one had plead guilty, leaving open possibility of more pleading guilty); *United States v. Kevin*, No. 97CR763 (JGK), 1999 WL 194749, at * 12 (S.D.N.Y. Apr. 7, 1999) (severance premature in 28 defendant case where reasons for severance were speculative and Court did not know how many defendants would remain at time of trial); *United States v. Heatley*, No. S2 96CR515, 1997 WL 12961, at * 4 (S.D.N.Y. Jan. 14, 1997) (finding severance premature where eighteen defendants charged and unclear how many would plead before trial, or what evidence would be proffered).  While it is true that trial has not been set, so it is uncertain how many Defendants will actually go to trial, one thing is certain to remain unchanged; defendants J. Goode and L. Goode are brothers.  Assuming both brothers proceed to trial, an argument that the spillover prejudice will result from their familial relationship (the crux of L. Goode's argument) is as unavailing today as it will be at the time of trial.  Such a motion is ripe for decision on the merits.

L. Goode has provided no such affidavit, and this Court cannot make an independent determination that such attempts to resolve these issues have happened and been unsuccessful. *See United States v. Minaya*, 395 F. Supp. 2d 28, 32 (S.D.N.Y. 2005). Defendant Walton *did* provide the requisite Local Rule 16.1 affidavit and his motion will be decided on the merits. Even if L. Goode did comply with the Local Rule 16.1 requirements, as Walton has, his motion would nevertheless be ripe for denial.

Federal Rule of Criminal Procedure 7(f) allows a defendant to request a bill of particulars to obtain information relevant to the nature of the charge against him, to enable him "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). The decision to grant a bill of particulars is within the sole province of the district court. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *Minaya*, 395 F. Supp. 2d at 34.

A bill of particulars is only necessary "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Antone Porter*, No. 06-1957-CR, 2007 WL 4103679, at *1 (2d Cir. Nov. 19, 2007). The central question is whether the "information sought is necessary, not whether it is helpful." *United States v. Gonzalez*, No. 04CR078 (DAB), 2004 WL 2297341, at *2 (S.D.B.Y. Oct. 13, 2004); *United States v. Guerrero*, 669 F. Supp. 2d 417, 726 (S.D.N.Y. 2009). Typically, where the information sought "is provided in the indictment or in some acceptable alternate form," such as discovery, "no bill of particular is required." *Bortnovsky*, 820 F.2d at 574; *see also Minaya*, 395 F. Supp. 2d at 34 (noting that a Court is required to "evaluate the charges contained in the indictment and the state of discovery").

Demands for information "with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *Id.* at 426; *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). Both L. Goode and Walton's request for bill of particulars amount to a demand for the who, what, when, and where information "routinely denied" in this Circuit. To the extent either of the Defendants request identification of the other coconspirators, the dates on which each of the Defendants entered into or left the conspiracy, or additional overt acts not alleged in the Indictment, the motion is denied. Defendants are not entitled to "information regarding how the Government alleges the defendant performed acts in furtherance of the conspiracy," *See Minaya*, 395 F. Supp. 2d at 36 (citing *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001)); *Guerrero*, 669 F. Supp. 2d at 426, and more specified dates on which the alleged illegal conduct occurred, *Minaya*, 395 F. Supp. 2d at 35 (citing *United States v. Lorenzano*, No. S6 03CR1256, 2005 WL 975980, at *3 (S.D.N.Y. Apr. 26, 2005)). Further, where, as here, the defendants proffer no arguments that "either the scope of the alleged conspiratorial conduct or the volume of discovery material necessitates the further identification of persons, places or events", *United States v. Robertson*, No. 07CR944, 2008 WL 220283, at *1 (S.D.N.Y. Jan. 23, 2008), a request for the "names of all co-conspirators and aiders and abettors," should be denied, *Minaya*, 395 F. Supp. 2d at 37.

Further, neither Defendant articulates a reason as to why a bill of particulars is necessary. In fact, L. Goode proffers no articulable facts as to why the bill of particulars would even be helpful; instead, he regurgitates the standard in a conclusory fashion. (*See* LG Br. at 3-4.)

Walton does little more to persuade this Court that a bill of particulars would be necessary in this matter. Walton argues that a single overt act relevant to him in the Indictment is insufficient to enable him to prepare for trial, but Walton makes no mention of countervailing considerations.

(*See* Walton Br. at 6-7.)  First, the Government need not detail each and every overt act alleged to have been committed by each of the coconspirators.  *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975).  Second, the Government has represented that considerable discovery has already been turned over including "reports, recordings and surveillance from controlled purchases of cocaine, recording and transcripts from calls and texts messages intercepted over multiple wiretaps, the results of analyses performed on the defendant's [sic] phones, lab reports, and phone records"; (*see* Walton Gov't Br. at 21), there is no need for a bill of particulars, *Bortnovsky*, 820 F.2d at 574; *Heatley*, 994 F.Supp. at 488 (denying motion for bill of particulars where indictment was sufficient and discovery was extensive); *United States v. McPherson*, No. 08CR1244, 2009 WL 4756470, at *2 (S.D.N.Y. Dec. 11, 2009) (denying request for bill of particulars where Indictment identified defendants' roles in conspiracy and Government provided discovery "relating to the allegations"); *Solomonyan*, 451 F. Supp. 2d at 641, 643.

## VI.    Motion to Compel Disclosure

Defendants' motions to compel disclosure include requests for *Brady* material, Jencks Act material, *Giglio* material, Rule 16 discovery, and disclosure of other crimes or wrongs pursuant to Rule 404(b) of the Federal Rules of Evidence.  (*See* JG Br. at 1-2, 20; LG Br. at 1, 4-13; Walton Br. at 2, 28-38.)  For the following reasons, the motions are denied.

Preliminarily, Defendants J. Goode and L. Goode's motions for discovery are procedurally barred by application of Local Criminal Rule 16.1.  Neither Defendant has provided an affidavit indicating that they have attempted, but failed to resolve discovery issues with the Government.  *See* Local Crim. R. 16.1.  The Court will consider the merits of the motions regardless.

**A.**  **Jencks Act, *Giglio*, and *Brady***

Defendants Walton and L. Goode's motions for Jencks Act (§ 3500 material) are all denied, except to the extent the Government is required to preserve agent notes, as detailed below.[17]  This Court is without authority to order "pretrial disclosure of witness statements."  *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (3500 not "the subject of discovery until th[e] witness has testified on direct examination").[18]  Defendants have not otherwise demonstrated that such information is "material within the meaning of *Brady*," to require earlier disclosure.  *United States v. Reddy*, 190 F. Supp. 2d 558, 575-76 (S.D.N.Y. 2002) (citing *Coppa*, 267 F.3d at 146); *see also Heatley*, 994 F.Supp. at 492 ("A defendant has no constitutional right to receive *Brady*, *Giglio*, *Kyles*, or Jencks Act materials before trial.").  The request for Jencks Act material is denied.

Walton makes an additional request that the Government be ordered to retain the following categories of documents: "(1) contemporaneous rough notes taken by Government agents of meetings, conversations or interviews during the course of his or her investigations; (2) the agent's subsequently prepared drafts of his or her reports of these incidents; and (3) the final reports signed by the Government agents."  (*See* Walton Br. at 30.)  The Government does not address this request in its opposition.  (*See* SW Gov't Br. at 23-24.)  The Government is under an obligation to "preserve handwritten notes made by agents during witness interviews" however, such an obligation is typically "relieved when the agent makes a formal report based on his own notes."  *Solomonyan*, 451 F. Supp. 2d at 648.  The Court does not know whether any notes still exist.  Accordingly, the Government is hereby directed to "preserve all existing notes, whether or not

---

[17] Walton provides a litany of information he seeks disclosure of at this time, which all amount to impeachment and *Brady* material.  (Walton Br. at 31-38.)  Defendant, however, has failed to proffer any authority that he "is entitled to disclosure, before trial, of impeachment evidence the government possesses."  *Heatley*, 994 F.Supp. at 491-92.

[18] Defendant Walton specifically requests that this Court order disclosure of Jencks Act material "at least 30 days prior to trial."  As discussed, *infra*, the Court is without authority to do so, and therefore denies any request specifying a period of time outside of that specified by statute, unless the evidence contains an element of *Brady* materiality, a showing Defendant has failed to establish.

they have been incorporated in formal reports." *Id.* This request is thus granted.

Defendants L. Goode and Walton also seek disclosure of *Giglio* material. Such requests are denied as premature, since the Government's obligation to disclose *Giglio* arises at the pendency of trial and knowledge of specific testifying witnesses. *Coppa*, 267 F.3d at 144; *United States v. Dames*, 380 F. Supp. 2d 270, 272 (S.D.N.Y. 2005). Trial has yet to be scheduled and the Government acknowledged its obligations under *Giglio*, (*see* LG Gov't Br. at 7; SW Gov't Br. 23-24), and indicated that it will provide such impeachment material at the Court's directive in advance of trial, (*id.*) Neither Defendant L. Goode nor Walton has even responded to the Government's contentions: this Court is not persuaded that the Defendants would be prejudiced in absence of the material at this time. *See Dames*, 380 F. Supp. 2d at 273. Their motions are denied.

Defendants L. Goode and Walton seek disclosure of *Brady* material. (*See* LG Br. at 11-13; Walton Br. at 28-29.) Nowhere in either of the motions do Defendants allege the existence of exculpatory material that has not been turned over. The Government has represented that "recognizes its obligations" and, "[s]hould the Government become aware of *Brady* material, it will promptly produce it." (*See* SW Gov't Br. at 23; LG Gov't Br. at 6-7.) Defendants' motions are moot in so far as the Government has already provided the necessary discovery and premature in the absence of an alleged discovery violation and the requests are therefore denied without prejudice to renew.

**B.  Disclosure and Preclusion of 404(b) and Other Evidence**

*1.  404(b) Evidence*

Defendants Walton and J. Goode move for disclosure of evidence pursuant to Rule 404(b). Defendant Walton requests that any Rule 404(b) evidence be turned over 60 days prior to trial. (*See* Walton Br. at 38.) J. Goode provides no time frame. (*See* JG Br. at 20.) The motions are

granted in part and denied in part.

Rule 404(b) requires the Government to provide "reasonable notice" in advance of trial of the general nature of any evidence of other crimes, wrongs, and acts it intends to introduce at trial. Fed. R. Evid. 404(b). The only timeframe for disclosure provided is the 60 days requested by Walton. The Government notes that it will "comply with any future date set by the Court in advance of trial," but argues that "requiring substantially more than four weeks' notice would be inappropriate." (*See* JG Gov't Br. at 25; SW Gov't Br. at 24.) Sixty days is a significant amount of time and thus inappropriate. This Court has already found 30 days to be reasonable, and in light of potential motions *in limine*, hereby imposes such a deadline on the Government. *See United States v. DiStefano*, 129 F. Supp. 2d 342, 351 (S.D.N.Y. 2001) (citing *United States v. Richardson*, 837 F. Supp. 570, 575 (S.D.N.Y. 1993)) ("notice afforded more than ten working days before trial has consistently been deemed by courts in this circuit as 'reasonable' within the meaning of Rule 404(b)"); *United States v. Brown*, No. 14CR509 (NSR), 2016 WL 4734667, at *3 (S.D.N.Y. Sept. 9, 2016). Accordingly, the Defendants' motions for 404(b) evidence are denied in part and granted in part, and the Government is directed to disclose evidence pursuant to 404(b) within 30 days of trial so that the Defense can have a reasonable opportunity to challenge the admissibility of the proffered evidence, if any.

L. Goode seeks preclusion of material the Government may intend to introduce at trial under Fed. R. Evid. 103, 104, 403, 404(b), 608, and 609. (*See* LG Br. at 4-11.) Defendant's requests are general, reiterate the rules in a conclusory fashion, and request preclusion on the ground that L.Goode "denies guilt in the [sic] all counts of the indictment lodged against him." (*See* LG Br. at 10-11.) The Government has not "given any notice of any 'other crimes' or 'bad acts' it intends to disclose. (*See* LG Gov't Br. at 6.) Accordingly, L. Goode's request to exclude

any such evidence is premature.  *See Dames*, 380 F. Supp. 2d at 277 (denying as premature motion

to exclude 404(b) evidence).  L. Goode's other requests to exclude impeachment evidence of the

Defendant are likewise denied.  "Nothing in Federal Rules of Evidence 608 and 609 requires the

Government to disclose impeachment evidence prior to trial."  *United States v. Castro*, No. S

94CR809 (JFK), 1995 WL 6235, at *3 (S.D.N.Y. Jan. 6, 1995).  To the extent there are specific

crimes or convictions the Defendant seeks to preclude, the Court will consider such challenges on

an appropriate motion *in limine* that specifies the crime or conviction and the appropriate basis for

exclusion.

### 2. *Government Witness List*

Defendant Walton seeks disclosure of the Government's witness list but has failed to

establish a "particularized showing of need" for a witness list at this juncture.  *See Dames*, 380 F.

Supp. 2d at 273 (denying request for witness list); *see also United States v. Bejasa*, 904 F.2d 137,

139-40 (2d Cir. 1990) (quoting *United States v. Cannone*, 528 F.2d 296, 200 (2d Cir. 1975) for

proposition that Government only has to disclose its witness list where defendant shows that

"disclosure [is] both material to the preparation of [the] defense and reasonable in light of the

circumstances") (alterations in original).  The motion is denied.

### 3. *Rule 16*

Defendant Walton also requests discovery pursuant to Fed. R. Crim. P. 16, including, *inter

alia*, disclosure of case-in-chief exhibits, experts, and co-conspirator statements.  (*See* Walton Br.

at 28-31.)  The Government represents that it has complied with Rule 16 obligations; (*see* SW

Gov't Br. at 21), the Rule 16 requests are therefore moot, *see Minaya*, 395 F. Supp. 2d at 34

(denying request for Rule 16 disclosure where "record provides no basis on which to conclude that

the Government is not in compliance with its obligations").  As to expert disclosures, the

Government represents if it decides to call an expert, it will disclose the expert's written statements and curriculum vitae within 30 days of trial. (*Id.* at 21-22.) Such a timeline is reasonable. *See United States v. Russo*, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007) (finding two weeks to be reasonable). With respect to case-in-chief exhibits, the Defendant has failed to demonstrate either that the discovery already provided is so "voluminous" or review "so burdensome" that it is necessary for the Government to "designate which items will be introduced." *See United States v. Cook*, 348 F. Supp. 2d 22, 31 (S.D.N.Y. 2004). As to co-conspirator statements, the Government represents that it does not intend to introduce any such statements that would raise issues in accordance with *Bruton v. United States*, 391 U.S. 123 (1968), (*see* SW Gov't Br. at 22), and Defendant has otherwise failed to "identif[y a] reason why the normal process of disclosure through the ordinary course of discovery, rulings on admissibility through motions *in limine*, and objections during the course of trial, are inadequate in this case," *see Russo*, 483 F. Supp. 2d at 310. Rule 16 does not otherwise require disclosure of co-conspirator statements. *Heatley*, 994 F.Supp. at 490. Defendant's request for Rule 16 discovery is denied.

### C. **Disclosure of Informants**

L. Goode also seeks an order compelling the Government to "disclose the identity of informants, their dates of birth, criminal records, if any, and all related material." (*See* LG Br. at 1, 14.) Defendant has failed to demonstrate why disclosure of identification of any informants would be necessary to avoid an unfair trial. The Government "is not generally required to disclose the identity of confidential informants." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citing *Rovario v. United States*, 353 U.S. 53, 59 (1957)). Typically, its interest in protecting "the anonymity of informants" is strong. *Id.* Consequently, the defendant "bears the burden of showing" that in the absence of disclosure, "he will be deprived of his right to a fair trial;" only

then is disclosure proper. *Id.* "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden." *Id.*

Defendant's reasoning is nothing short of speculation. Defendant argues that an informant "would testify that the defendant was involved as charged in the indictment" and thus is a critical witness to "the truth of whether in fact, the defendant knowingly participated in the charged crimes." (*See* LG Br. at 14.) This postulation is premised on an assumption that CI-2's information was central to the probable cause determination on the search warrant. (*Id.*) L. Goode's request is insufficient to outweigh the Government's interest in protecting its informants' identities, particularly, where, as here, a trial date is not set and the Government has not notified the Court of an intent to have confidential witnesses testify. Defendant L. Goode's motion is denied without prejudice to renew upon a proper showing.

## CONCLUSION

For the foregoing reasons, Defendants J. Goode, L. Goode, and Walton's pretrial motions are DENIED in part and GRANTED in part, for reasons as articulated in this Opinion. The Court only GRANTS the motions to the extent the Court: (1) suppresses the three communications that should have been minimized on the J. Goode wiretap, *see supra* I(A)(1); (2) directs the Government to preserve all agent notes, whether or not incorporated into a final report, *see supra* VI(A); and (3) directs the Government to turn over any 404(b) evidence 30 days before trial, *see supra* VI(B)(1); and (4) directs the Government to make expert disclosures, if any, 30 days prior to trial, *see supra* VI(B)(3).

The Clerk of the Court is respectfully requested to terminate the motions at ECF Nos. 69, 76, 78.

Dated:    February 15, 2018                      SO ORDERED:
              White Plains, New York

                                        NELSON S. ROMÁN
                                        United States District Judge