USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12 | 20 | 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

JEMEL GOODE,

                Defendant.

---

16-CR-00529-01 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

On August 9, 2016, Defendant Jemel Goode ("Defendant") pled guilty to participating in a conspiracy to distribute, and possess with the intent to distribute, 280 grams and more of mixtures and substances containing a detectable amount of cocaine base (commonly referred to as "crack"). (*See* ECF No. 4.) He moves now, pursuant to Federal Rule of Civil Procedure 11(d)(2)(B), to withdraw his plea, claiming it was involuntary. (*See* ECF No. 181.)

As Defendant has failed to show a "fair and just reason" that would justify withdrawal, Defendant's Motion is DENIED.

## BACKGROUND

This case involves a multi-defendant conspiracy to possess and distribute controlled substances, in violation of 21 U.S.C. Sections 841 and 846.

### *1.*    *Pretrial Proceedings*

On August 9, 2016, Defendant was charged for conspiring to distribute, and possessing with intent to distribute, 280 grams or more of mixtures and substances containing a detectable amount of cocaine base from around July 2014 through July 2016, in violation of 21 U.S.C. Sections 841 and 846. (*See* Indictment, ECF No. 4.).

On August 9, 2016, Defendant appeared before the Honorable Lisa Margaret Smith, and Theodore Green, Esq. was appointed as Defendant's counsel ("Initial Counsel"). (*See* Docket Entry Dated 09/09/2016.)

On May 18, 2018, the Government offered Defendant a plea agreement (the "Plea Agreement"), whereby the Defendant pled guilty to a superseding information (the "Information"), which charged the defendant with conspiring to distribute, and possessing with the intent to distribute, 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, from at least in or about 2010, up to and including at least in or about July 2016, in violation of Title 21, USC Sections 841 (b)(1)(A) and 846. (*See* ECF No. 145.) In the plea agreement, Defendant also acknowledged that he decided to plead guilty, because he knew he was, in fact, guilty. (*See* Plea Agreement, ECF No. 181-4, at 6.)

### 2. *Defendant's Guilty Plea*

Defendant appeared before the Court on May 31, 2018, and pled guilty pursuant to the Plea Agreement. (*See* Docket Entry dated 5/31/2018.)

During this hearing, Defendant affirmed, under oath, that he fully understood his rights, was satisfied with his current counsel's representation, and was pleading guilty because he was guilty. (*See* Transcript of Plea Hearing, ("Plea Tr."), at 10-13, ECF No. 181-3.)

The Court then confirmed that Defendant knowingly waived his right to be charged by indictment. (Plea Tr. at 8-9.) ("THE COURT: "All right. So do you understand that by signing this document you are waiving your right to be prosecuted by way of Indictment, meaning by way of asking the government to present the charges before a grand jury? Do you understand that?...; THE DEFENDANT: Yes.") The Court also confirmed that when Defendant signed the written waiver of indictment, he did so knowingly and voluntarily. (*Id.* at 8) ("THE COURT: Okay. Did

anybody force you to sign this document? THE DEFENDANT: No; THE COURT: Did you do so voluntarily?; THE DEFENDANT: Yes.")

The Court then confirmed that Defendant intended to plead guilty to the Information, advised Defendant of the charge contained in the Information, reminded Defendant that he was under oath, explained the consequences of making any false statements, and asked Defendant if he understood that he had a constitutional right to remain silent and not to incriminate himself. Defendant repeatedly stated that he understood. (*Id.* at 8-10) (THE COURT: …Do you understand that you have a constitutional right to remain silent and not incriminate yourself?"; THE DEFENDANT: Yes.; THE COURT: Do I understand correctly that you wish to waive that right for the purpose of pleading guilty to the charges of Count One of the Information?; THE DEFENDANT: Yes.")

The Court then inquired into Defendant's competence to plead guilty. (*Id.* at 11-13.) During this part of the proceeding, Defendant confirmed that, other than being a bit apprehensive, (*id.* at 12), he was feeling well and was able to understand what was happening in court and could make decisions. (*Id.*):

| THE COURT: | All right. Is your mind clear today? |
|---|---|
| THE DEFENDANT: | Yes. |
| THE COURT: | All right. Other than perhaps being a bit apprehensive, which is understandable, are you feeling well today? |
| THE DEFENDANT: | Yes. I just have a little cold. |
| THE COURT: | Okay. You and many other folks, unfortunately, but I hope you feel better. |
| THE DEFENDANT: | Thank you. |
| THE COURT: | Do you understand that the proceeding that has been brought against you by the government and the charges as they are set |

forth in the Information?

THE DEFENDANT: Yes.

Based on Defendant's responses and the Court's observations of Defendant's demeanor, the Court found Defendant fully competent to enter an informed plea. (*Id.* at 13) ("THE COURT: On the basis of Mr. Goode's answers to my questions and my observations of his demeanor, I find that he is fully competent to enter an informed plea at this time.").

Third, the Court explained to Defendant the full import of entering a guilty plea:

THE COURT:      Mr. Goode, before I accept any plea from you, I am going to ask you certain additional questions so I am fully satisfied that the reason you wish to plead guilty to the charge brought against you by the government in this proceeding is that, in fact, you are guilty and that you fully understand the consequences of your plea. You should plead guilty only if you are guilty, meaning that you did commit the crime of which the government has charged you and for no other reason. Do you understand this?

THE DEFENDANT: Yes.

THE COURT:      Now, are you guilty of the charges brought against you by the government?

THE DEFENDANT: Yes.

(*Id.* at 13-14.)

The Court also asked whether the defendant was satisfied with the representation of Subsequent Counsel up to the time of his guilty plea and the defendant answered affirmatively:

THE COURT:      Are you satisfied with your attorney and his representation of Goode –

THE DEFENDANT: Yes, I am.

THE COURT:      Of you. I am sorry.

THE DEFENDANT: Yes, I am.

(*Id.* at 13.)

Next, the Court reviewed with the defendant the constitutional rights that he would be giving up if he entered a guilty plea:

THE COURT: I am going to describe to you certain rights that you have under the Constitution and laws of the United States, which you will be giving up if you enter a plea of guilty and I accept it, so please listen carefully. Under the Constitution and the laws of the United States, you have a right to a speedy and public trial, you would be presumed innocent, and the government would be required to prove you guilty by competent evidence beyond a reasonable doubt. At a trial, the burden of proving you guilty beyond a reasonable doubt would be on the government. You would not have to prove that you were innocent. If there were a trial, a jury composed of 12 people selected from this district would have to agree unanimously that you were guilty. If there were a trial, you would have the right to be represented by an attorney at trial and at every other stage of the proceeding, and if you could not afford one, an attorney would be provided to you free of cost. If there were a trial, you would have a right to see and hear all of the witnesses against you, and your attorney could cross-examine them. You would have a right to have your attorney object to the government's evidence and offer evidence on your behalf if you so desired, and you would have the right to have subpoenas issued or other compulsory process used to compel witnesses to testify in your defense. Further, no emphasis or suggestion of guilt could be drawn if you were to choose not to testify in your defense at a trial. Mr. Goode, do you understand each and every one of these rights?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about any of these rights?

THE DEFENDANT: No.

THE COURT: Do you understand that by entering a plea of guilty today, you are giving up each and every one of these rights; that you are waiving these rights; and that you will have no trial; do you understand this?

THE DEFENDANT: Yes, sir.

(*Id.* at 14-16.)

After walking Defendant through each of the rights, the Court advised Defendant that there was no requirement that he plead guilty:

> THE COURT: Do you understand that you can change your mind right now and refuse to enter a plea of guilty – I am sorry – do you understand that you can change your mind right now and refuse to enter a plea of guilty at this time? Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You do not have to enter this plea if you do not want to for any reason. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you wish to continue with your plea of guilty at this time?
>
> THE DEFENDANT: Yes.

(*Id.* at 16.)

Further, the Court advised Defendant about how sentencing would take place. The Court explicitly warned Defendant that no promise existed with respect to what his sentence would be and that if the sentence imposed by the Court was different from what the defendant hoped for, it would not be a basis on which to withdraw his plea. (*Id.* at 18-20) (THE COURT: Do you also fully understand that even if your sentence is different from what your attorney or anyone else told you it might be, or if it is different from what you expect, you will still by bound by your guilty plea, and you will not be allowed to withdraw your guilty plea? THE DEFENDANT: Yes.").

The Court then reviewed the Plea Agreement with Defendant. During this portion of the proceeding, Defendant confirmed that he had read the Plea Agreement and discussed it with his then counsel, Andrew Rubin, (*id.* at 20-21), that he understood the agreement, (*id.* at 21), and that nothing had been left out (*id.* at 25). Following that, the Court confirmed that

Defendant entered the Plea Agreement knowingly and voluntarily, with no additional promises or inducements or threats having been made to him:

> THE COURT: All right. Did anyone force you to sign this agreement?
>
> THE DEFENDANT: Yes – no. Sorry.
>
> THE COURT: I'm sorry. Let's be clear. Did anyone force you to sign this agreement?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Does this letter agreement constitute your entire and total understanding of the agreement between the government and you and your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In entering into this agreement, do you fully understand and voluntarily consent to comply with all of the provisions in the plea agreement that specify any commitments that you are making by signing this agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that by signing the plea agreement, you are promising to comply with all of these conditions and that your failure or refusal to do so would release the government from any obligation imposed on it by the agreement?
>
> THE DEFENDANT: Yes.
>
> \*    \*    \*
>
> THE COURT: All right. Has anyone offered to you any inducements or threatened your or forced you to plead guilty or to enter into this plea agreement?
>
> THE DEFENDANT: No.

(*Id.* at 21-22.)

Finally, the Court asked Defendant to explain what he had done to commit the offenses to which he was pleading guilty. During this allocution, the Court asked many follow-up questions

and Defendant described his participation in the charged conduct in detail:

THE COURT: All right. Mr. Goode, at this time I want you to tell me in your own words what you did in connection with the crime such that you are entering a guilty plea. Please state when the crime occurred, where, what happened and what, if any, involvement you had with the crime charged.

THE DEFENDANT: Between 2010 and 2016, I sold crack in Haverstraw to individuals. I continued to sell it. I sold it to a confidential informant that I thought was a friend at one point; but yes, I was just selling crack to support my family, I guess.

THE COURT: Okay. Let's go over this step by step. All right. The crime that you are charged with that you are pleading guilty to –

THE DEFENDANT: Uh-huh.

THE COURT: -- that occurred between the year 2010 and 2016,

correct? THE DEFENDANT: Yes, sir.

THE COURT: All right. And it took place in Haverstraw, New

York? THE DEFENDANT: Yes, sir.

\*       \*       \*

THE COURT: Okay. All right. So you were involved with the sale of cocaine, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Crack cocaine, more specifically?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Were you selling crack cocaine on your own or were you working with other individuals to sell crack cocaine in the vicinity of Haverstraw, New York?

THE DEFENDANT: I was working with others.

THE COURT: You were working with at least one other individual?

THE DEFENDANT: Yes, sir.

8

THE COURT:            Okay. And in regards to the amount of cocaine, crack cocaine, that you possessed, all right, was it at a minimum of 280 grams of crack cocaine?

THE DEFENDANT: Yes, sir.

THE COURT:            All right. So you admit to possessing, at a minimum, 280 grams of crack cocaine, and the purpose of the possession of the crack cocaine was so that it could be sold on the streets?

THE DEFENDANT: Yes, sir.

THE COURT:            All right. And did you know that it was unlawful to sell crack cocaine?

THE DEFENDANT: Yes, sir.

THE COURT:            All right. Did anyone force you to sell crack, the crack cocaine?

THE DEFENDANT: No, sir.

THE COURT:            You did this voluntarily and of your own free will?

THE DEFENDANT: Yes, sir.

(*Id.* at 25-28.)

At the end of the plea proceeding, the Court accepted the defendant's guilty plea and set a sentencing date for September 7, 2018.

### 3.    *Post-Plea Proceedings*

Following Defendant's plea, the Probation Department interviewed Defendant. Defendant did not, at this time, make any mention of his desire to withdraw his guilty plea nor his innocence of the crimes to which he pled guilty. Subsequently, on or about September 4, 2018, Defendant informed the Court that he intended to request new counsel. Consequently, on September 7, 2018, the sentencing was changed to a status conference. (*See* ECF No. 162.)   During the status conference, the Defendant requested new counsel and informed the Court of his intention to file a

motion seeking to withdraw his plea. (*See* Docket Entry dated 09/07/2018.). The Court then issued an order substituting new counsel and set the briefing schedule for Defendant's motion. (*Id.*).

### 4.    *Defendant's Motion to Withdraw His Guilty Plea*

On December 3, 2018, Defendant filed the instant motion, seeking to withdraw his guilty plea. (*See* Defendant's Motion to Withdraw, ("Def. Mot."), ECF No. 181.) In connection with his Motion, Defendant submitted an affidavit in which he claimed that his original counsel, Mr. Green and subsequent counsel, Andrew Rubin, failed to make certain motions and investigate leads at Defendant's direction. (*See* Defendant's Affidavit, ("Def. Aff."), ECF No. 183.) ("I told both of my lawyers from the start that I wanted to go to trial. I reviewed the discovery and I had a specific list of things to investigate because I believed they would support my defense. Mr. Rubin, who took over the case from Mr. Green, refused to do these things and instead focused on trying to negotiate a plea offer and then pressuring me to take it.") (*Id.* at 1-2.)

Specifically, Defendant claimed that Mr. Green initially failed to get relevant pen register data, records the Government relied upon to indict Defendant, the New York State police manual, phone records, and information about the Government's confidential source. (*Id.* at 2-5.) Next, Defendant claimed that Mr. Rubin failed to pursue Defendant's desire to go to trial (which Defendant wanted to do because he believed that there was no evidence that that he *conspired* to distribute cocaine base and there was no evidence that the substance he allegedly sold was *crack* rather than *cocaine*.) (*Id.* at 5.) Defendant also argues that if he were convicted of a cocaine conspiracy, the guidelines would be much lower, but that he was denied the full benefit of this fact because Mr. Rubin did not follow up on obtaining any lab reports or information about "field

tests"[1] and did not properly review videos that supposedly revealed Defendant's lack of participation in any narcotics transactions. (*Id.* at 5-6.)

Defendant further argues that he: 1) is legally innocent of participating in a conspiracy to distribute narcotics because he sold them to a confidential informant and one cannot conspire with an individual working on behalf of the government, 2) should be able to withdraw his plea because he was pressured into entering the plea due to Mr. Rubin's lack of desire to pursue trial and 3) Mr. Rubin misrepresented Defendant's mother's opinion regarding accepting the plea agreement.

For the following reasons, the Court finds that none of Defendant's arguments provide a "fair and just reason" to permit withdrawal of his guilty plea.

## DISCUSSION

A guilty plea is a "grave and solemn act." *United States v. Hyde*, 520 U.S. 670,677 (1997). A district court has broad discretion to decide whether to grant a defendant's motion to withdraw his plea of guilty. *See, e.g., United States v. Saft*, 558 F.2d 1073, 1082 (2d Cir.1977). Under Fed. R. Civ. P. 11,

> A defendant may withdraw a plea of guilty ... after the court accepts the plea, but before it imposes sentence if ... the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Cr. P. 11(d). Although motions to withdraw guilty pleas are granted at the discretion of the district judge, *United States v. O'Hara*, 960 F.2d 11, 14 (2d Cir.1992),

> society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.

*United States v. Doe*, 537 F.3d 204, 211 (2d Cir.2008).

---

[1] Again, Defendant focuses much of his argument on the fact that government's lab reports all supposedly tested positive for "cocaine" and not "cocaine base." (Def. Aff. at 6.)

11

Hence, when a defendant seeks to withdraw his plea, he bears the burden of demonstrating that there are valid grounds for the withdrawal. *Gonzalez*, 970 F.2d at 1100. A change of heart is not sufficient. *Id.* ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."). Nor is it sufficient that a defendant wishes to change his trial strategy, for a plea of guilty is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim, ... but 'a grave and solemn act' which is 'accepted only with care and discernment.'" *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.1975) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

To withdraw a plea of guilty, a defendant must show a "fair and just reason" for allowing him to do so. A "fair and just" reason can be found using four factors: the voluntariness of the plea; the time that elapsed between the plea and the motion; if the defendant claims his innocence; and if the government would be prejudiced by withdrawing the plea. *Doe*, 537 F.3d at 210; *United States v. Rosen*, 409 F.3d 535, 548 (2d Cir.2005) ("Where the motion argues that the plea was not voluntary, a fortiori the court must focus on voluntariness.").

Defendant bears the burden of raising a "significant question" as to whether his plea was voluntary. *Doe*, 537 F.3d at 211. The standard is strict. Most pleas that are not induced by threats or misrepresentations or entered into by those mentally incapable of rationally deciding their best course of action, are upheld as voluntary. *United States v. Davis*, 906 F. Supp. 2d 305, 310 (S.D.N.Y. 2012), *aff'd*, 607 F. App'x 112 (2d Cir. 2015). As the Second Circuit has said, "a plea ... is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir.1988). Similarly, the Supreme Court

has instructed that a "plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755, 90 S.Ct. 1463.

In sum, U.S. courts, time after time, have upheld the plea-bargaining process, which is an essential feature of our criminal justice system. *United States v. Marquez*, 909 F.2d 738, 742 (2d Cir.1990). The Court therefore must decide if Defendant has a "fair and just reason" to justify withdrawal of his plea.

## ANALYSIS

Defendant fails to provide a "fair and just reason" that would justify the withdrawal of his guilty plea and does not raise a "significant question" as to the voluntariness of his plea. In struggling to find a justifying reason, the Defendant primarily argues that: 1) his previous counsel, Mr. Rubin, repeatedly pressured Defendant to enter the plea because Mr. Rubin felt Defendant did not have a strong case for trial, and 2) he is legally innocent because the lab reports show that the narcotics at issue comprised of cocaine and not cocaine base and because there is insufficient evidence to show that he was part of a conspiracy to distribute drugs. The Court addresses why, based on the four voluntariness factors, none of these arguments, nor Defendant's ancillary points, suffice to permit withdrawal of his guilty plea.

### 1. The Voluntariness of Defendant's Motion

The Court begins with the voluntariness of Defendants' plea and the supposedly pressurizing tactics employed by Defendant's counsel. Again, in the Second Circuit, a plea is deemed voluntary unless it is the product of actual or threatened physical harm, mental coercion

overbearing the defendant's will, or the defendant's inability to weigh his options rationally. *Miller*, 848 F.2d at 1320. A plea may also not be voluntary if it is based on facially improper conduct, such as a bribe from the prosecutor. *Brady*, 397 U.S. at 775.

For claims that a plea was not made voluntarily due to ineffective counsel, the Second Circuit requires a defendant to show that counsel's "deficient performance undermine[d] the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). Moreover, a defense counsel's alleged ineffectiveness is evaluated under the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). To prevail, the defendant must (1) show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice." *Strickland*, 466 U.S. at 687-88, 693-94; *accord Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001). Once these elements are satisfied, a defendant must demonstrate that his "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." 466 U.S. at 687. In the context of advice concerning a proposed plea, the second prong of *Strickland* requires "the defendant to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, as the Government notes, the jest of Defendant's claim is that he "felt he had no choice but to plead guilty" because his "lawyers had not done and would not do the investigation and preparation necessary to defend [him] at trial." (Def. Aff. at 2.) The Court finds, however, that all of Defendant's arguments related to involuntariness ring hollow.

Beginning with Defendant's argument that his guilty plea was involuntary because his original counsel did not properly review the wiretap and pen register data, the record clearly

reflects otherwise. On February 15, 2018, this Court issued an opinion, denying a motion to suppress wiretap evidence, which reflected that Defendant's former counsel knew about the pen register data and moved to suppress the wiretap evidence on that basis. (*See* Opinion & Order Dkt. No. 107.) While Defendant may not agree with the Court's decision, the argument that his original counsel failed to even consider the pen register data simply does not stand muster.

Next, Defendant makes a conclusory claim about how his original counsel did not review relevant phone records. (*See* Def. Aff. at 4.) As the Government notes, there is nothing in the record—other than Defendant's post-plea statement—to support this, which makes the claim far to conclusory to be credible. Indeed, this Court has long held that "[b]ald assertions that a guilty plea was induced by trickery and misrepresentation are insufficient." *U. S. ex rel. Powell v. Zelker*, 349 F. Supp. 119, 120 (S.D.N.Y. 1972); *United States v. Makropoulos*, No. 14-CR-305 (DLI), 2016 WL 843284, at *5 (E.D.N.Y. Mar. 1, 2016) ("a defendant's bald assertions to the contrary constitute insufficient grounds to withdraw a guilty plea.").

Third, Defendant argues that his Counsel was ineffective for failing to properly question the lab results and the field tests related to his controlled buys. The Court has reviewed the record and finds this argument to also lack credibility, particularly considering Defendant's contrary admissions at the plea hearing:

> THE COURT: Okay. All right. So you were involved with the sale of cocaine, correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Crack cocaine, more specifically?
>
> THE DEFENDANT: Yes, sir.

(Plea Tr. at 28.) The Second Circuit has repeatedly found that where a Defendant patently contradicts prior statements made at the plea allocution, such bald contradictions—without any

corroborating evidence—are insufficient grounds to withdraw a guilty plea. *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997); *see also United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *United v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011).

Further, the Court agrees with the Government's position that the lab reports, which explicitly referenced the presence of cocaine, did not relay that Defendant did not deal with illegal narcotics containing a cocaine base, but only reflect that they were explicitly tested for the presence of cocaine, as that is sufficient for criminal liability under New York Law. Moreover, N.Y. Penal Law § 220.16(1) provides that: "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: 1. a narcotic drug with intent to sell it[,]" where a " '[n]arcotic drug' means any controlled substance listed in schedule I(b), I(c), II(b) or II(c) ... of section 3306 of the Public Health Law." N.Y. Public Health Law § 3306 Schedule II(b)(4) the lists only cocaine, not cocaine base, as a controlled substance and defines narcotics drugs to include "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances including cocaine and ecgonine, their salts, isomers, and salts of isomers....."). In other words, the presence of cocaine was enough to trigger New York State criminal laws and to find liability for distribution of crack cocaine. *See also Cassells v. Ricks*, No. 99 Civ. 11616 (AJP), 2000 WL 1010977, at *6 (S.D.N.Y. Jul. 21, 2000) (noting that according to New York law, "possession with intent to sell any form of cocaine, including crack cocaine or powdered cocaine, violates Penal Law § 220.16(1)").

Most importantly, here, the lab reports were not the only evidence used to affirm that Defendant possessed and conspired to distribute crack cocaine. Defendant himself explicitly owned up to his responsibility for dealing crack cocaine at his plea allocution.

In sum, none of Defendant's arguments reflect that either of Defendant's counsel was ineffective or that there was any physical harm or mental coercion overbearing Defendant's will that prevented Defendant from making a voluntary decision at his plea allocution.

Accordingly, this factor weighs in favor of the Government.

### 2.    *The Timing of the Defendant's Motion*

For withdrawals of guilty pleas, the relevant timeline is the time between when the plea was entered and when the Defendant unequivocally communicated his desire to withhold the guilty plea. *United States v. Grant*, No. S7 10 CR. 431 CM, 2014 WL 4828469, at *7 (S.D.N.Y. Sept. 25, 2014) ("A defendant's desire to withdraw a plea must be communicated unequivocally."). In other words, merely "contemplating a motion to withdraw a guilty plea ... is insufficient to trigger Rule 11(d)(1)." *Id.* Defendant made his unequivocal desire to withdraw his guilty plea known to the Court and the Government until he contacted the Court on or about September 4-7, 2018, about three months after he pled guilty. (ECF Nos. 162-163 and Docket Entry Dated 09/07/2018.)

Defendant's three-month delay is long enough to militate against Defendant. *See United States v. Whalen*, 101 F.3d 1393 (2d Cir. 1996) (upholding district court's denial of the defendant's motion to withdraw his guilty plea where three months had passed between his plea and the motion to withdraw); *United States v. Miller*, 3 F. Supp. 2d 376, 384 (W.D.N.Y. 1998) (finding that where the defendant waited nearly three months after pleading guilty before he filed his motion, the timing suggested that he was simply getting cold feet over the prospect of commencing an incarceration that would last many years); *United States v. Craig*, 985 F.2d 175, 177 (4th Cir. 1993) (holding that eight-week interval between guilty plea and motion to withdraw plea "militate[d] against withdrawal"); *United States v. Sims*, 822 F. Supp. 1308, 1316 (N.D. Ill. 1993) (finding interval of two and one-half months between guilty plea and filing of motion to withdraw

plea, which was filed shortly after codefendant's acquittal, made motion look like an "after the fact fiction ...").

Moreover, as the Government noted, Defendant informed the Court about his intention to withdraw his guilty plea less than two weeks after Probation filed the PSR recommending a sentence of 120 months' imprisonment. Such eerie timing strongly suggests that Defendant had cold feet after-the-fact, rather than a sincere belief that he entered his plea due to impropriety. *See Miller*, 3 F.Supp. 2d at 384 ("Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just...."); *United States v. Doyle*, 981 F.2d 591, 594 (1st Cir. 1992) ("One would have to believe in the Tooth Fairy to think it merely coincidental that defendant suddenly realized that plea agreement was invalid on the heels of district court's divulging that it was contemplating lengthy sentence"); *United States v. Joseph*, 742 F. Supp. 618, 621-22 (M.D. Fla. 1990) ("[t]he timing of [the defendant's] motion to withdraw strongly suggests that [his] desire to withdraw is not motivated by any misunderstanding as to the nature and circumstances of his plea or any improper influence by counsel but rather due to a change of heart after defendant saw the Pre-Sentence Report.").

Accordingly, this factor too weighs in the Government's favor.

### 3.    *Defendant's Assertion of Innocence*

Defendant now asserts that he was innocent of the charge, namely arguing that there was no evidence that what he sold was crack rather than cocaine and that there was no evidence of a conspiracy because the controlled purchases in which he participated involved a confidential informant with whom a defendant legally cannot conspire.

The Court finds that Defendant's argument fails because Defendant's bald assertions have no support and are therefore baseless after-the-fact statements that the court need not credit; further, many are again flatly contradicted by the evidence produced in discovery and by Defendant's own admissions during the guilty plea proceeding.

Again, the Second Circuit has consistently held that "bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715. Although Defendant now claims that there is no evidence that he participated in a conspiracy, (Def. Aff. at 3-6), at the plea hearing, Defendant categorically admitted otherwise. (*See* Plea Tr. at 25-26) ("THE DEFENDANT: Between 2010 and 2016, I sold crack in Haverstraw to individuals. I continued to sell it. I sold it to a confidential informant that I thought was a friend at one point; but yes, I was just selling crack to support my family, I guess.").

Similarly, just as Defendant now claims that there is no evidence that he ever distributed crack versus cocaine, (Def. Aff. at 3-6), at the plea hearing, Defendant unquestionably admitted that he specifically sold crack cocaine:

> THE COURT: Okay. All right. So you were involved with the sale of cocaine, correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Crack cocaine, more specifically?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Were you selling crack cocaine on your own or were you working with other individuals to sell crack cocaine in the vicinity of Haverstraw, New York?
>
> THE DEFENDANT: I was working with others.
>
> THE COURT: You were working with at least one other individual?
>
> THE DEFENDANT: Yes, sir.

| THE COURT: | Okay. And in regards to the amount of cocaine, crack cocaine, that you possessed, all right, was it at a minimum of 280 grams of crack cocaine? |

THE DEFENDANT: Yes, sir.

| THE COURT: | All right. So you admit to possessing, at a minimum, 280 grams of crack cocaine, and the purpose of the possession of the crack cocaine was so that it could be sold on the streets? |

THE DEFENDANT: Yes, sir.

| THE COURT: | All right. And did you know that it was unlawful to sell crack cocaine? |

THE DEFENDANT: Yes, sir.

| THE COURT: | All right. Did anyone force you to sell crack, the crack cocaine? |

THE DEFENDANT: No, sir.

| THE COURT: | You did this voluntarily and of your own free will? |

THE DEFENDANT: Yes, sir.

(*See* Plea Tr. at 26-27).

In addition, at the plea hearing, the Government described the plethora of evidence that it had gathered in support of Defendant's charges, including, *inter alia*: wire interceptions, cooperator testimony, phone records, subpoena returns, surveillance recordings, lab reports, law enforcement testimony, and narcotics that were purchased. (Plea Tr. at 28.)

The Court thus finds all of Defendant's legal arguments to be incredible, especially considering their patent contradiction with what was said at the plea hearing by both parties. Accordingly, Defendant's arguments do not provide "fair and just reasons" for the guilty plea to be withdrawn and this factor weighs in favor of the Government. *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) (A motion to withdraw a guilty plea may be denied without a

hearing where the defendant's allegations "merely contradict the record," are "inherently incredible," or are "simply conclusory.").

### 4. *Prejudice to the Government*

Permitting Defendant to withdraw his plea would also prejudice the Government. The Government is correct that it need not show prejudice, where, as here, the Defendant has presented no valid basis for withdrawal. *United States v. Cayce,* 319 Fed.Appx. 23, 26 (2d Cir.2009) (summary order) ("If the movant is unable to carry his burden of showing that a fair and just reason supports the withdrawal of his guilty plea, the district court need not reach the question of prejudice to the government."); *See also Torres*, 129 F.3d 710.

In any event, the Court finds that the Government would suffer obvious prejudice in granting Defendant's request because the Government planned its litigation strategy based on Defendant's entering a guilty plea. The Government has not been in contact with certain witnesses who would testify at trial, including the confidential informant who made purchases from Defendant. The controlled buys themselves occurred over two years ago, and with each passing day, witnesses' memories have faded.

In short, if Defendant is permitted to casually withdraw his plea, he will have wasted a considerable amount of the Government's preparatory time, during which the witnesses had put this case behind them and were not preparing to testify against the defendant. *See United States v. Lopez,* 385 F.3d 245, 254 (2d Cir.2004) ("'Prejudice' in the context of plea withdrawal typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time."). *United States v. Danzi*, 726 F. Supp. 2d 120, 134 (D. Conn. 2010), *opinion*

*clarified*, No. 3:07 CR 305 MRK, 2010 WL 3463272 (D. Conn. Aug. 2, 2010) ("permitting [the defendant] to withdraw his plea would … mean that the Government's efforts in proving the quantity of marijuana attributable to [the defendant] were entirely wasted; and … that the memories of the witnesses the Government would call to prove [the defendant's] guilt would have faded by more than 14 months.").

Accordingly, this factor also weighs in the Government's favor.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to withdraw his guilty plea pursuant to Rule 11(d)(2)(B) is DENIED.

Dated:   December 20, 2018
   White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge